# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DARRELL D. CAGE,**

       Plaintiff,

    -vs-                                         Case No. 14-CV-633

**PAUL KEMPER, et al.,**

       Defendants.

# DECISION AND ORDER

Darrell D. Cage, a *pro se* plaintiff, filed a civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The Court screened the plaintiff's complaint pursuant to 28 U.S.C § 1915A(a) and allowed the plaintiff to proceed with his claim that the defendants violated his constitutionally protected right to marriage, which applies in the prison context subject to reasonable restrictions. (ECF No. 9.) This matter is now before the Court on the defendants' motion for summary judgment (ECF No. 22), which is fully briefed. For the reasons set forth below, the defendants' motion will be granted in part and denied in part.

# I. RELEVANT FACTS[1]

## A. The Parties

The plaintiff has been housed at Racine Correctional Institution (Racine) since June 18, 2012; however, he has been incarcerated continuously at other institutions since May 19, 1994. His prior criminal record dates back to 1986. He is currently in prison following a conviction for first degree intentional homicide that included him stabbing the victim and then stomping on the victim's head and face. He will be eligible for a parole hearing in 2044.

Paul Kemper is the warden of Racine, and Ronald Malone is the deputy warden. Michelle Bones is the Institution Complaint Examiner at Racine. At all relevant times, Tommie Thomas was the Corrections Program Supervisor at Racine, and Reotha Cole was the chaplain.

## B. The Marriage Policy

Division of Adult Institutions Policy and Procedure 309.00.06 (DAI 309.00.06) governs inmate marriages. Pursuant to the policy, an inmate

---

[1] The facts in this section are primarily taken from the defendants' Proposed Findings of Fact (ECF No. 24), which are admitted for the purpose of deciding summary judgment given the plaintiff's failure to respond to them. *See* Civil Local Rule 56(b)(4) (E.D. Wis.). Additional facts are taken from the plaintiff's sworn complaint (ECF No. 1), which the Seventh Circuit has instructed district courts to construe as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

may request to marry while incarcerated if the following conditions are met:

1. The marriage does not pose a threat to the security of the institution/center or a threat to the safety of the public;
2. There are no legal impediments to the marriage;
3. The inmate is not scheduled for release within nine months;
4. The proposed spouse or the proposed spouse's children are not victims of the inmate;
5. The proposed spouse has never been convicted in any criminal activity with the inmate; and
6. The proposed spouse has been on the inmate's visiting list for a minimum of one year.

In addition to the requirements of DAI 309.00.06, an inmate who is not within three years of release must complete twelve consecutive joint counseling sessions totaling a minimum of twenty-four hours. There is a minimum of thirty days and a maximum of sixty days between sessions. The inmate must bear all financial obligations associated with pre-marital counseling, the marriage, and any staff overtime and fringe benefits.

Finally, the marriage coordinator at the prison will send the proposed spouse a letter that includes the following information:

1. The inmate's name of commitment and any aliases;

2. The inmate's current and previous committing offenses;

3. The inmate's length of sentence;

4. The inmate's projected release from prison if available; and

5. Any other information on prior criminal convictions about the inmate, such as domestic abuse, that the coordinator believes is appropriate that will aid the intended spouse in making an informed decision.

If the marriage coordinator desires, he or she may also require the proposed spouse to report to the institution to meet with a multi-disciplinary team to discuss the marriage request.

Completion of all steps and requirements *does not guarantee that the marriage request will be approved*.

## C. The Defendants' Involvement with the Plaintiff's Marriage Request

Cole, the chaplain/marriage counselor, interviewed the plaintiff, arranged marriage counseling sessions for the plaintiff and his fiancée, and handled administrative tasks such as forwarding forms to appropriate recipients. Cole also mailed a memo to the plaintiff's fiancée that included, among other topics, the plaintiff's arrest record, the length of his sentence,

- 4 -

and his projected release from prison. Cole recommended to the warden that the plaintiff's marriage request be denied, but did not have the authority to render the ultimate.

Thomas was Cole's supervisor. He helped guide Cole in his collection of the necessary materials and reviewed Cole's draft documents and correspondence. Thomas did not provide a recommendation to Kemper on whether to approve or deny the plaintiff's marriage request.

Malone, the deputy warden, was included on correspondence addressed to Kemper. He did not respond to the correspondence, nor did he provide a recommendation to Kemper on whether to approve or deny the plaintiff's marriage request.

Kemper, the warden, evaluated and denied the plaintiff's marriage request.

Bones dismissed the plaintiff's offender complaint, which the plaintiff filed after Kemper denied his marriage request.

**D. The Plaintiff's Marriage Request**

On May 2, 2013, the plaintiff submitted a formal request to Kemper for permission to marry his long-time fiancée Denise Prentice[2]. The parties agree that the plaintiff completed the necessary requirements according to DAI 309.00.06 and the Racine marriage procedure, including completing twelve, two-hour counseling sessions, which the plaintiff paid for.

Kemper reviewed the plaintiff's request and took the following into consideration: (1) A memo from Cole recommending the request be denied; (2) A memo from the plaintiff's current agent recommending the request be denied; (3) The plaintiff's criminal history, including the brutality of the plaintiff's assault and the plaintiff's drug use; (4) The plaintiff's failure to complete required programming such as Anger Management and Alcohol and Other Drug Abuse programming; and (5) The impact of the plaintiff's sentence on his ability to support and provide for Ms. Prentice.

On February 10, 2014, Kemper sent a memo to the plaintiff denying the plaintiff's request for marriage. Kemper stated, "I have reviewed your

---

[2] Although not a sworn statement, the plaintiff indicates in his Supplement Response to Defendant's [sic] Motion for Summary Judgment (ECF No. 40) that he has known Ms. Prentice for more than thirty years.

request to be married while incarcerated at Racine Correctional Institution. It is noted that you and fiancé [sic] have completed the required counseling sessions in accordance with the DAI policy #309.00.06. However, taking into consideration your criminal history, sentence structure, as well as input from your agent, I have determined that there is no justifiable reason for this marriage to take place under these circumstances." (ECF No. 24 at ¶ 53.)

### E. The Plaintiff's Offender Complaint

The plaintiff filed an offender complaint. On March 19, 2014, Bones recommended the complaint be dismissed because Kemper had met the criteria for informing the plaintiff of his denial of the marriage request. Bones noted that the warden has final authority to approve or deny a marriage request, and she had no reason to disagree with his decision. Kemper accepted Bones's recommendation and dismissed the complaint on March 21, 2014.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

The defendants argue they are entitled to summary judgment based on the following: (1) Defendants Malone, Thomas, and Bones did not have

- 8 -

the requisite level of involvement because they did not recommend or decide to deny the plaintiff's request to marry; (2) Deciding that an inmate with an assaultive history, unmet programming needs and thirty years left on his sentence is not allowed to immediately marry serves a reasonable and legitimate penological interest because it protects the public and his fiancée; and (3) Defendants are entitled to qualified immunity.

## A. No Personal Involvement of Defendants Malone, Thomas, and Bones

"Section 1983 makes public employees liable 'for their own misdeeds but not for anyone else's.'" *Burns v. Fenoglio*, 525 Fed.Appx. 512, 515 (7th Cir. 2013) (quoting *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)). Defendants Malone, Thomas, and Bones argue they should be dismissed because they were "nothing more than tangential players" in the decision to deny the plaintiff's marriage request. (ECF No. 23 at 10.) Specifically, unlike Cole, who recommended that the plaintiff's request be denied, and unlike Kemper, who denied the plaintiff's request, Malone and Thomas had limited administrative involvement. They merely helped move the plaintiff's request along through the various steps of the process. Bones's

involvement was limited to finding that Kemper's decision complied with the applicable DOC and Racine regulations.

In fact, the plaintiff appears to agree with the defendants' characterization that Malone, Thomas, and Bones had limited involvement: In his response to the defendants motion, the plaintiff identifies Kemper as "the primary actor in this civil action, due to his overall authority in the decision making process of my request for marriage." (ECF No. 40 at 7.) The plaintiff does not mention any of the other defendants in his response.

The limited nature of Malone and Thomas's involvement means that they did not have the requisite personal involvement in the decision to deny the plaintiff's marriage request, and they will be dismissed. Also, because ruling against a prisoner on an administrative complaint does not cause or contribute to a constitutional violation, Bones will be dismissed. *See George v. Smith*, 507 F.3d 605, 609 -10 (7th Cir. 2010).

## B. The Denial of the Plaintiff's Marriage Request

Prisoners enjoy a constitutionally protected right to marry, which is subject to substantial restrictions as a result of incarceration. *Turner v. Safely*, 482 U.S. 78, 95-96 (1987). However, the restrictions imposed by a

prison must be reasonably related to a penological concern in order to be valid. *Id.* at 95-98.

Here, the defendants identify the penological concern as the protection of the public and Ms. Prentice. The Court agrees with the defendants that these concerns are legitimate interests, so if Kemper believed that the public and/or Ms. Prentice would be endangered by the plaintiff marrying Ms. Prentice, then the decision to deny the plaintiff's request to marry would be reasonably related.

However, in light of the recent Seventh Circuit Court of Appeals opinion in *Riker v. Lemmon*, 2015 WL 4863586 (7th Cir. Aug. 14, 2015), these reasons appear inadequate to overcome Cage's right to marry when considering the following facts.

Ms. Prentice would be entering this marriage with her eyes wide open. Even Cole recognized that further interviews with Ms. Prentice were unnecessary "because [she and the plaintiff] had known each for a long time and they were adamant about their decision to pursue marriage." (ECF No. 24 at ¶ 37.) Cole informed Ms. Prentice of the plaintiff's past crimes and the length of the plaintiff's sentence. During their twenty-four hours of marriage counseling they presumably talked about the challenges they would face. Ms. Prentice was undeterred.

- 11 -

Case 2:14-cv-00633-RTR    Filed 08/25/15    Page 11 of 13    Document 55

These facts, coupled with the additional fact that the plaintiff will remain incarcerated for another *thirty* years before he is eligible for parole, put in question Kemper's claim that "good cause" exists for denial of the right

The safety of the public is certainly a legitimate penological concern, but on the current record a question remains whether Cole's recommendation and Kemper's decision to deny the plaintiff's marriage request is related to the goal of keeping the public and/or Ms. Prentice safe. As such, summary judgment in favor of these defendants is not appropriate.

## C. Qualified Immunity

"The affirmative defense of qualified immunity protects government officers from liability for actions taken in the course of their official duties if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine if qualified immunity applies, the courts employ a two-prong test: (1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the officers violated a constitutional right, and (2)

- 12 -

Case 2:14-cv-00633-RTR   Filed 08/25/15   Page 12 of 13   Document 55

whether that right was clearly established at the time the conduct occurred. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)." *Hardaway*, 734 F.3d at 743.

Because the prohibition against denying an inmate the right to marry without good cause was well established at the time of these events, defendants Cole and Kemper are not entitled to qualified immunity.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** "Defendants' Motion for Summary Judgment" (ECF No. 22) is **GRANTED** with respect to defendants Malone, Thomas, and Bones, and **DENIED** with respect to defendants Cole and Kemper.

**IT IS ALSO ORDERED THAT** the Court will attempt to find an attorney to represent the plaintiff *pro bono* on his surviving claims.

Dated at Milwaukee, Wisconsin, this 25th day of August, 2015.

                                      **BY THE COURT:**

                                      _____
                                      **HON. RUDOLPH T. RANDA**
                                      **U.S. District Judge**